# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

---

In the Matter of the Application of
CARLOS M. DAVILA as President of A New
Beginning For Immigrant's Rights, Inc.

                                 Petitioner,

For a judgment pursuant to Article 78 and Section
3001 of the Civil Practice Law and Rules,

            — against —

STEVEN LANG, Director
OFFICE OF LEGAL ACCESS PROGRAMS;

                          Respondent.

Index No.
2601Ω2/2018

**VERIFIED PETITION**

---

      This proceeding is brought pursuant to CPLR 7803(3) & CPLR 3001 seeking an

Order in the form of a Declaratory Judgment declaring;

- Respondent action under a New Rule enacted January 18, 2017 is arbitrary and
  unconstitutional.

- Respondent's Termination of Petitioner A New Beginning For Immigrant's
  Rights, Inc's the participation as a Recognized Organization, previously
  participating for Six years as a   qualified Religious Non-For Profit.  to continue
  participating under   8 C.F.R §1292.12 the New Rule without a due process
  hearing is arbitrary and unconstitutional.

- Declaring that the New Rule §1003.103 is contrary to the agency own policy. In
  that §1003.103 ( c ) the duty to notify applies for conviction  entered on or after
  August 28,2000.

- That to simply presume a direct relationship or unreasonable risk exists because
  the applicant has a conviction record  Violate New York  Article 23-A

Petitioner Carlos M. Davila commenced this Article 78 proceeding to annul the May 10, 2017 decision by respondent Steven Lang Director of OLAP, revoking Petitioner continue participation in the OLAP program. Petitioner asserts that the decision is arbitrary and capricious and discriminatory in that it gives undue weight to the fact that he pleaded guilty to Serious Crimes more than 30 years ago and fails to give appropriate consideration to Article 23-A. §§ 701(3) (CRD); 703-a(3) (CGC). Violating Article 23-A is an unlawful discriminatory practice under the NYCHRL. N.Y.C. Admin. Code § 8-107(10).

On June 28, 2017 even though Petitioner have more than Six Year working as an BIA Accredited Representative without disciplinary actions and in possession of a Certificates of Good Conduct ("CGC"). Respondent with no consideration Revoke Petitioner's Full Accreditation solely because the 1988 Felony Conviction. CGC remove statutory barriers to employment for people with criminal records that specifically allows him to be a BIA Accredited Representative. Despite legislative intent—and in clear contradiction of New York public policy—Respondent refuses to consider Petitioner Carlos M. Davila to continue participating in the OPLA Program, even though his last involvement with the criminal justice system was more than 30 years ago.

## JURISDICTION

1.      This is a Proceeding pursuant to CPLR 7803 (3) seeking an order in the nature of declaratory judgment  CPLR 3001  challenging  the Termination of Full accreditation under 8 C.F.R §1292.12 and §1003.103 of the Legally stablished Non-For Profit Religious Organization in violation of Due Process and  the permanent revocation of

2

Petitioner's previously granted Accreditation due to a 1988 Conviction purely arbitrary and in direct contravention of the constitution and stablished procedure law of New York.

**PARTIES**

2. Petitioner Carlos M. Davila resides at Bronx County in New York; there, he also received notice from the OLAP refusing to qualify him as a DOJ Accredited Representative (enacted January 18, 2017)(" Formerly BIA Accredited Representative"). Petitioner was evaluated by the Bronx Supreme Court and New York State Board of Parole for and received a Certificate of Good Conduct (CGC) and was issue in Bronx County for convictions that occurred in Bronx County. Petitioner's evidence of rehabilitation, which lead to the issuance of the CGC at issue here, accrued in Bronx County. Petitioner has applied and will apply for DOJ Accredited Representative (enacted January 18, 2017)(" Formerly BIA Accredited Representative") jobs in Bronx County, all of which cannot hire Petitioner unless he is qualified by Respondent.

3. Petitioner, A New Beginning For Immigrant's Rights , Inc., A Non-For-Profit corporation duly organized and existing under the laws of New York State and the New York State Department of Education. Is a IRS 501 ( C ) (3) Organization and is also registered with the New York State Attorney General Office as a charity Organization.

4. Respondent, Steven Lang, is the Program Director, Office of Legal Access Programs (OLAP); (the OLAP Director), or the OLAP Director's designee, shall have the authority to:

    (1) Develop and administer a system of legal orientation programs to provide education regarding administrative procedures and legal rights under immigration law;

3

(2) Develop and administer a program to recognize organizations and accredit representatives to provide representation before the Immigration Courts, the Board, and DHS, or DHS alone. The OLAP Director shall determine whether an organization and its representatives meet the eligibility requirements for recognition and accreditation. The OLAP Director shall also have the authority to administratively terminate the recognition of an organization and the accreditation of a representative and to maintain the roster of recognized organizations and their accredited representatives;

(3) Issue guidance and policies regarding the implementation of OLAP's statutory and regulatory authorities; and

(4) Exercise such other authorities as the Director may provide.

His address is 5107 Leesburg Pike, Suite 1900, Fall Church, VA 22041. However, Service to Respondent is proper pursuant to Fed. R. Civ. Proc. (5)(b) to the Office of the U.S Attorney's Office located at 86 Chamber St. New York, N.Y 10007.

## VENUE

5.      Venue is properly laid where "material events took place." CPLR § 506(b); see § 7804(b). Venue is proper in Bronx County because Petitioner earned the CGC at issue; he received the OLAP notice there; and his Place of Business located there.

## EXCEPTIONS TO THE EXHAUSTION RULE

6.      Petitioner need not exhaust when: (a) an agency's action is challenged as either unconstitutional on its face or wholly beyond its grant of power; or (b) when resort to an administrative remedy would be futile; or (c) when resort to an administrative remedy would cause irreparable injury. Watergate II Apartments v. Buffalo Sewer Auth., 46 N.Y.2d 52,57 (1978). Petitioner's assertion herein is that he was denied due process and the agency failed to follow the procedure in NY Exec L § 172-A (2015) ;New York Executive Law §296 and Correction Law §753(1)(2); 8 C.F.R §1292.12 and §1003.103 and failure to comply with  8 CFR §§292.2 ( c )(2); 292.2 ( a )(5), is an arbitrary, capricious, an abuse of discretion and/or et seq. and Plaintiff has a clear right to judicial

4

review of such conduct . See Classic Realty LLC vs. New York Div. of Hous. & Cmty
Renewal, 2 N.Y 3d 142, 777 N.Y.S2d 1, 808 N.E.2d 1260 (2004); Fain v. Brooklyn
College of the City Univ. of New York, 122 A.D2d 992,493 N.Y.s2d13 (2d Dept. 1985).

### STATEMENT OF FACTS

7.     On or about January 04, 2011 A New Beginning For Immigrant's Rights , Inc., A
Non-For-Profit corporation duly organized and existing under the laws of New York
State and the New York State Department of Education. See Exhibit "A".

8.     On or about January 04, 2011, we apply for Tax Exempt Status under Section 501
( c ) (3) of the Internal Revenue Code.  We were approved. See Exhibit "B".

9.     On or about 06/08/2011 We registered with the State of New York Office of the
Attorney General "Charities Bureau. See Exhibit "C".

10.    On or about August 2011 we filed an application for an Organization Recognition
and for a Full Accredited Representative pursuant to Title 8, Section 1292.2 (a)(d), Code
of Federal Regulation. On November 29, 2011 the Organization and Petitioner Carlos
Davila's application was approved. See Exhibit "D"

11.    The approved letter indicates that "Based upon our review of the application, we
are satisfied that Carlos Davila appear to be a person of good moral character and
possesses the requisite experience and knowledge of Immigration Law and Procedure and
Advocacy skill to practice before the DHS and the Board. Accordingly, the application
for full accreditation will be approve. ¶ 2. See Exhibit "E"

12.    On 2014 Petitioner renew his application and the renew was granted.

13.    Petitioner claim his entitlement under the Old Rules since his acceptance to the
program back in 2011 was guide it by the Old Rules. See Exhibit "F"

5

14.     On or about December 19, 2016, a New Rule on the Recognition and

Accreditation (R&A) Program was published in the Federal Register 8 C.F.R 1292 et

seq.) 81 Fed. Reg.92346).

15.     The New Rule took effect on January 18, 2017 and it transferred authority for

regulation and adjudication of applications for organizations' recognition and

individuals' accreditation from the Board of Immigration Appeal (BIA) to the Office of

Legal Access Program (OLAP). Attached is also a Copy of R&P Program Frequently

asked questions. See Exhibit "G"

## DUE PROCESS VIOLATION

16.     On May 10, 2017 Respondent's send a determination letter to terminate the Full

accreditation of Plaintiff Carlos Davila and the withdrawal of the Organization

Recognition. Base on Petitioner's conviction for a Serious Crime. See Exhibit "H"

17.     Before the full accreditation was terminated, we filed a timely "Request for

Administrative Review" and was served to USCIS New York City District Office.

16.     We served our Request to OLAP via Priority Express (EL68949597US) on May

17, 2017 and was delivered on May 18, 2017 at 11:53 am. See Exhibit "I"

17.     Nevertheless, we never received any correspondence from OLAP)(Then on June

6, 2017, we filed an Appeal on Form EOIR-45 together with the money Order for the

amount of $110.00. Also with that application we included a Brief in support of the

Request for Administrative Review. The same was sent to OLAP via Priority Express

(EL255549945US) and was delivered on June 7, 2017. I also served the USCIS New

York City District Office and EOIR Disciplinary Counsel at 20 Massachusetts Ave. Rm.

4025, Washington, D.C 20529.). See Exhibit "J"

18.    On June 23, 2017 , Cynthia L. Crosby, Deputy Chief Clerk, mailed a Rejection letter of form EOIR-45, that was received by BIA on June 7, 2017 for the following reason: "There is nothing pending before the Board at this time." See Exhibit "K"

19. On 8/07/2017 Petitioner filed a with U.S Small Business Administration- Office of the National Ombudsman a "complaint" against Respondent, requesting assistance to that Federal Agency regarding Organization Termination. See Exhibit "L"

20. However, on August 11, 2017 the Office of the National Ombudsman, wrote " Please be advice that the Office of the National Ombudsman has no law enforcement authority not can it overrule, stop or delay any federal action or extend any procedural deadline." M"

21. Plaintiff claimed that the underlying revocation, suspension removal, termination of the Organization and the accreditation proceeding was  against the law because the action or decision was made without a sound reason constitute a deprivation of due process;

22.    The imposition of discipline by the adjudicating official would result in grave injustice.

23.    Termination of Petitioner's Full accreditation under 8 C.F.R §1292.12 and §1003.103 is arbitrary and in violation of lawful procedure.  In that pursuant to §1003.103 ( c ) the duty to notify applies for conviction of a Serious Crime was limited to case   entered on or after August 28,2000.

21.    According to Defendant's letter May 10, 2017, it not clears why the Organization recognition was withdraws.  Why a hearing was never held, and why we were not notify about our rights pursuant to 8 CFR §§292.2 ( c )(2); 292.2 ( a )(5); 8 CFR §§103.1 and 103.3).

7

22.     Under the Old Rules 8 CFR §292.2 ( c )(1993) "[t]he Board may withdraw the recognition of any organization which has failed to maintain the qualification require by 8 CFR §292.2 ( a )." This regulation provides that the Service may investigate any organization it believes no longer meets those standards, and if such investigation established to the satisfaction of the district director in whose jurisdiction the organization is located that withdrawal proceedings should be commenced, the district director shall issue the organization notice to Show Cause why its recognition should not be withdrawn. 8 CFR §§292.2 ( c )(2); 292.2 ( a )(5) ( The Organization shall be advised of its rights to appeal in accordance with 8 CFR §§103.1 and 103.3). Something that they never did. See Exhibit "F"

23.     Instead, Respondent made his May 10, 2017 as a final decision not providing Plaintiff with any other legal venue to challenge his "final" termination. Specifically, when we filed a Timely Request for an Administrative Review on May 17, 2017. Pursuing for an administrative remedy **was futile**

24.     A New Beginning for Immigrant's Rights, Inc, is in full compliance with the New York State Attorney General. See Exhibit "N"

25.     Petitioner Carlos M. Davila earned a Certificate of Relief from Disabilities on April 8, 1993. Then on March 21, 2007 the Board of Parole granted Petitioner a Permanent Certificate of Good Conduct; to remove all legal bars and disabilities to employment, license and privilege... See Exhibit "O"

26.     Petitioner Carlos M. Davila possesses broad knowledge and adequate experience in immigration law, practice and procedure. See Exhibit "P"

8

27.     To discern the Legislature's intent, the statutory framework and legislative history of both Correction Law Article 23 and §1003.103 and§1003.103 ( c ) are explained in detail below.

**28.**     Violating Article 23-A is an unlawful discriminatory practice under the NYCHRL. N.Y.C. Admin. Code § 8-107(10).

### STATUTORY FRAMEWORK OF CORRECTION LAW ARTICLE 23.

29.     New York law provides Certificates of Relief from Disabilities ("CRD") and Certificates of Good Conduct ("CGC") to relieve holders of any "disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein." N.Y. CORRECT. LAW §§ 701(1) (CRD), 703-a(1) (CGC). Convictions covered by either certificate shall not "be deemed to be a conviction within the meaning of any provision of law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right, or a disability to apply for or to receive any license, permit, or other authority or privilege covered by the certificate." §§ 701(2) (CRD); 703-a(2) (CGC).

30.     A certificate entitles the holder to be considered for jobs and licenses that would otherwise be unavailable because of his convictions, and they are part of a statutory scheme that carries out New York State public policy to "encourage the licensure and employment of persons previously convicted of one or more criminal offenses." § 753(1)(a). Employers and licensing agencies can still consider his convictions, however, consistent with Correction Law Article 23-A, enacted "to establish reasonable procedures to prevent the unfair discrimination against former criminal offenders in regard to

9

licensure and employment. . . ." Governor's Approval Memorandum, Bill Jacket, ch. 931, L.1976. Ex. 3.

31.     There are two key differences between CRDs and CGCs. First, CRDs remove forfeitures imposed by law in addition to disabilities. § 701. If a CRD is issued when a criminal defendant is sentenced, the defendant will not be subject to any automatic penalties imposed by law. § 703-b(3). In contrast, CGCs can only be issued after a minimum period of good conduct and therefore, by definition, do not cover automatic penalties. Second, CGCs are the only way for an otherwise-disqualified person to hold public office—a CRD is insufficient. § 703-a; *see* § 701(1).

32.     Otherwise, for present purposes both certificates have the same legal effect, but differ in who is eligible, how individuals apply, and the standards applicants must meet.

33.     Individuals with no more than one felony can apply for a CRD. § 700(1)(a). If an individual has two or more felonies, they are legally ineligible for a CRD and must apply for a CGC. *See* §§ 702(2)(a); 703(3)(a) (CRD applicant must be an eligible offender as defined in § 700).

34.     Individuals apply for a certificate either through the court that sentenced them or through the State Board of Parole. Courts issue CRDs, unless the individual was sentenced to time in state prison or is applying for a federal or non-New York conviction. In those cases, the Board of Parole must issue the CRD. § 702(1). Only the Board of Parole can issue a CGC. § 703-b(1).

35.     If an individual is eligible for a court-issued CRD, it may be granted at any time, even when the defendant is sentenced. § 702(1). If an individual is eligible for a Parole-

10

issued CRD, it may be granted at any time after the individual is released from incarceration. § 703(1)(a).

36.     If an individual is only eligible for a CGC, however, the process is much more arduous.

➢   First, the person must wait a certain number of years after the end of his sentence—including paying all related fines—before applying. For Class A and B Felonies, the waiting period is five years; for Class C, D, and E Felonies, it is three years; for Misdemeanors, it is one year. § 703-b(3).

➢   Second, three members of the Board of Parole must unanimously agree to issue the CGC. § 703-b(2).

37.     In 1976, the Legislature broadened Article 23 and additionally created Article 23-A to encourage the rehabilitation and reintegration of people with criminal records. Article 23-A explicitly protects such individuals from employment discrimination; it is enforceable through the State and City Human Rights Laws. The amendments to Article 23 clarified the legal effect of a CGC; shifted CGCs from Corrections Law Article 2, which contained the Board of Parole's powers; and reduced the minimum period of good conduct required to current levels: one year for a misdemeanor; three years for a Class C, D, or E Felony; and five years for a Class A or B Felony. Article 23 was broad to "lift job restrictions from rehabilitated (individuals) now deprived of over 125 licensing and employment categories because of their criminal records." Memorandum of Sen. Marino, Bill Jacket, ch. 931, L.1976; Ex. 5.

38.     In 1982, Article 23 was amended to allow CRD applicants an opportunity to obtain and dispute a court-ordered probation report.

11

39.    In 1983, both Article 23 and the Public Health Law were amended so that CRDs

no longer prevented mandatory suspension of nursing home operator licenses when

holders were convicted of an industry-related felony. This was done in response to *Hodes*

*v. Axelrod*, 56 N.Y.2d 930 (N.Y. 1982), which held that CRDs trumped the mandatory

suspension in the Public Health Law. The amendment was passed despite the danger that

it "would set a precedent for further exceptions to the protections established in the

Corrections Law. . . ." Budget Report on Bills, Bill Jacket, ch. 584, L.1983; Ex.6

40.    There is no question that if Respondent follow the stablished New York Article

23, the outcome would had been different.

### STATUTORY FRAMEWORK OF THE NEW RULE § 1003.103

#### (A) IMMEDIATE SUSPENSION AND SUMMARY DISCIPLINARY PROCEEDINGS;

#### (B) DUTY OF PRACTITIONER TO NOTIFY EOIR OF CONVICTION OR DISCIPLINE.

### (A) IMMEDIATE SUSPENSION -

### (1) Petition.

38.    The EOIR disciplinary counsel shall file a petition with the Board to suspend

immediately from practice before the Board and the Immigration Courts any practitioner

who has been found guilty of, or pleaded guilty or nolo contendere to, a serious crime, as

defined in § 1003.102(h), or any practitioner who has been suspended or disbarred by, or

while a disciplinary investigation or proceeding is pending has resigned from, the highest

court of any State, possession, territory, or Commonwealth of the United States, or the

District of Columbia, or any Federal court, or who has been placed on an interim

suspension pending a final resolution of the underlying disciplinary matter.

**(2) DHS petition**.

39.   DHS may file a petition with the Board to suspend immediately from practice before DHS any practitioner described in paragraph (a)(1) of this section. See 8 CFR 292.3(c).

**(3) Copy of petition**.

40.   A copy of a petition filed by the EOIR disciplinary counsel shall be forwarded to DHS, which may submit a written request to the Board that entry of any order immediately suspending a practitioner before the Board or the Immigration Courts also apply to the practitioner's authority to practice before DHS. A copy of a petition filed by DHS shall be forwarded to the EOIR disciplinary counsel, who may submit a written request to the Board that entry of any order immediately suspending a practitioner before DHS also apply to the practitioner's authority to practice before the Board and Immigration Courts. Proof of service on the practitioner of any request to broaden the scope of an immediate suspension or proposed discipline must be filed with the Board or the adjudicating official.

**(4) Immediate suspension**.

41.   Upon the filing of a petition for immediate suspension pursuant to §§ 1003.103(a)(1) or 1003.103(a)(2), together with a certified copy of a court record finding that a practitioner has been found guilty of, or pleaded guilty or nolo contendere to, a serious crime, or has been disciplined or has resigned, as described in paragraph (a)(1) of this section, the Board shall forthwith enter an order immediately suspending the

13

practitioner from practice before the Board, the Immigration Courts, and/or DHS, notwithstanding the pendency of an appeal, if any, of the underlying disciplinary proceeding, pending final disposition of a summary disciplinary proceeding as provided in paragraph (b) of this section.

42.     Such immediate suspension will continue until imposition of a final administrative decision. If an immediate suspension is imposed upon a practitioner, the Board may require that notice of such suspension be posted at the Board, the Immigration Courts, or DHS. Upon good cause shown, the Board may set aside such order of immediate suspension when it appears in the interest of justice to do so. If a final administrative decision includes the imposition of a period of suspension, time spent by the practitioner under immediate suspension pursuant to this paragraph may be credited toward the period of suspension imposed under the final administrative decision.

## SUMMARY DISCIPLINARY PROCEEDINGS

43.     The EOIR disciplinary counsel (or DHS pursuant to 8 CFR 292.3(c)(3)) shall promptly initiate summary disciplinary proceedings against any practitioner described in paragraph (a) of this section by the issuance of a Notice of Intent to Discipline, upon receipt of a certified copy of the order, judgment, or record evidencing the underlying criminal conviction, discipline, or resignation, and accompanied by a certified copy of such document. However, delays in initiation of summary disciplinary proceedings under this section will not impact an immediate suspension imposed pursuant to paragraph (a) of this section. Summary proceedings shall be conducted in accordance with the provisions set forth in §§ 1003.105 and 1003.106.

44.    Any such summary proceeding shall not be concluded until all direct appeals from

an underlying criminal conviction shall have been completed.

> (1) In matters concerning criminal convictions, a certified copy of the court record, docket entry, or plea shall be conclusive evidence of the commission of the crime in any summary disciplinary proceeding based thereon.

> (2) In the case of a summary proceeding based upon a final order of disbarment or suspension, or a resignation while a disciplinary investigation or proceeding is pending (i.e., reciprocal discipline), a certified copy of a judgment or order of discipline shall establish a rebuttable presumption of the professional misconduct. Disciplinary sanctions shall follow in such a proceeding unless the attorney can rebut the presumption by demonstrating clear and convincing evidence that:

>> (i) The underlying disciplinary proceeding was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

>> (ii) There was such an infirmity of proof establishing the attorney's professional misconduct as to give rise to the clear conviction that the adjudicating official could not, consistent with his or her duty, accept as final the conclusion on that subject; or

>> (iii) The imposition of discipline by the adjudicating official would result in grave injustice.

**The final Rules at 8 CFR 1292.12(a)(3)-(5).**

45.    Regarding those convicted of a serious crime, this prohibition supplements the

character and fitness requirement, as the Department has determined that individuals with

serious crimes are not qualified to be accredited. Unlike with attorneys permitted to

appear before EOIR and DHS, the Department has the authority to decide whether

nonlawyers should be accredited and permitted to provide immigration legal services in

the first instance and need not be limited to pursuing discipline against them based on a

serious crime after they have been accredited.  Emphasis added

15

**(B)  DUTY OF PRACTITIONER AND RECOGNIZED ORGANIZATIONS TO NOTIFY EOIR OF CONVICTION OR DISCIPLINE.**

46.     A practitioner and if applicable, the authorized officer of each recognized organization with which a practitioner is affiliated must notify the EOIR disciplinary counsel within 30 days of the issuance of the initial order, even if an appeal of the conviction or discipline is pending, when the practitioner has been found guilty of, or pleaded guilty or nolo contendere to, a serious crime, as defined in § 1003.102(h), or has been disbarred or suspended by, or while a disciplinary investigation or proceeding is pending has resigned from, the highest court of any State, possession, territory or Commonwealth of the United States, or the District of Columbia, or any Federal court.

47.     A practitioner's failure to do so may result in an immediate suspension as set forth in paragraph (a) of this section and other final discipline. An organization's failure to do so may result in the administrative termination of its recognition for violating the reporting requirement under 8 CFR 1292.14. **This duty to notify applies only to convictions for serious crimes and to orders imposing discipline for professional misconduct entered on or after August  8, 2000. [ 65 FR 39526, June 27, 2000, as amended at 73 FR 76923, Dec. 18, 2008; 77 FR 2014, Jan. 13, 2012; 81 FR 92362, Dec. 19, 2016].**

## ARGUMENT

I.      **WHEN A PERSON WITH A CGC ENCOUNTERS A STATUTORY BAR TO EMPLOYMENT, THE CGC PREVAILS ABSENT CLEAR LANGUAGE IN BOTH ARTICLE 23 AND THE BARRIER STATUTE.**

48.     New York law prevents people with certain criminal convictions from holding over fifty occupations and licenses. Both CRDs and CGCs, however, remove these statutory bars, allowing certificate-holders to apply despite their disqualifying convictions. N.Y. CORRECT. LAW §§ 701(1),(2) (CRD); 703-a(1),(2) (CGC). People with certificates are not guaranteed a license when they apply, however; the licensing agency retains the discretion to deny the applicant consistent with Article 23-A. §§ 701(3) (CRD); 703-a(3) (CGC). Violating Article 23-A is an unlawful discriminatory practice under the NYCHRL. N.Y.C. Admin. Code § 8-107(10).

49.     Clearly, though, a person with a certificate must be allowed to apply like anyone else. When a person with a CRD or a CGC encounters a statutory disability or bar to employment, the certificate trumps the barrier absent a clearly articulated statutory exception. *Hodes v. Axelrod*, 56 N.Y.2d 930, 932 (N.Y. 1982).

50.     In *Hodes*, Petitioners were convicted of crimes that, per the Public Health Law, mandated "automatic revocation" of their nursing home certifications. *Id.* When Petitioners were convicted, however, they received CRDs. *Id.* Since CRDs prevent automatic forfeitures imposed by law, Petitioners' licenses could not be revoked, despite the Public Health Law. *Id.*

51.     Because the OLAP's position contravenes plain statutory language in defiance of controlling Court of Appeals authority, its decision must be reversed.

## RENDERING CGCs INEFFECTIVE BY IMPLICATION CREATES AN UNJUST RESULT CONTRARY TO LEGISLATIVE INTENT AND PRINCIPLES OF STATUTORY CONSTRUCTION.

52.     The OLAP's interpretation of the NY Exec L § 172-A (2015) ; New York Executive Law §296 and Correction Law §753(1)(2); 8 C.F.R §1292.12 and §1003.103

and failure to comply with 8 CFR §§292.2 ( c )(2); 292.2 ( a )(5), and the presumption that CGCs cannot remove statutory barriers against people with criminal records—is not relevant. Because statutory construction is the courts' main function, "(w)hen the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency." *Yong-Myun Rho v. Ambach*, 74 N.Y.2d 318, 321 (N.Y. 1989) (quoting *Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451, 459 (N.Y. 1980)).

53.     While legislative intent may be discerned from a statute's plain language, "apparent lack of ambiguity is rarely, if ever, conclusive. Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." *Sutka v. Conners*, 73 N.Y.2d 395, 403 (N.Y. 1989) (internal citation omitted)."These principles of statutory construction assume particular significance where, as here, the Legislature has spoken to an issue simultaneously in separate laws, sometimes cross-referencing them, and has repeatedly adopted and amended pertinent provisions piecemeal throughout decades." *Id.* at 403-04.

54.     "It is a general rule of statutory construction that earlier statutes are properly considered as illuminating the intent of the Legislature in passing later acts, especially where there is doubts as to how the later act should be construed, since when enacting a statute, the Legislature is presumed to act with deliberation and with knowledge of the existing statutes on the same subject. In contrast, later statutes that are part of a system of

general policy are "to be taken as intended to fit into the existing laws on the same subject unless a different purpose is clearly shown.

55.     Petitioner Carlos M. Davila. is caused hardship and injustice because, if his CGC cannot lift OLAP barrier, he is prohibited from practicing his chosen occupation for life. No matter how long his period of good conduct; no matter how much training experience he gains, he will never Represent an Immigrant in New York Immigration Court, because he has been convicted of Serious Crime. This blanket exclusion defies legislative intent for two reasons. First, the Legislature has demonstrated an intent not to bar all felons by only making certain felonies disqualifying convictions. Secondly, Correction Law Article 23-A specifically requires employers to consider individual evidence of rehabilitation for all applicants with conviction histories; blanket exclusions run afoul of state law.

56.     Both CGCs and CRDs are vested with power using the *exact same* statutory language, but Petitioner is legally ineligible OLAP does not allow him to be a Full Accredited Representative—even though it indicates the Board of Parole found him qualified to do so—it will be useless.

57.     "(I)t is a cardinal principle of statutory interpretation that intention to change a long-established rule or principle is not to be imputed to the Legislature in the absence of a clear manifestation. Hence, where a contrary intention does not appear that construction will be given a statute which accords with prior legislative policy on the same question." N.Y. STAT. LAW § 126. This principle holds even if the statutes are not *in para materia*, and it carries over to amendments: "it will not be presumed that the Legislature intended to change or withdraw long established principles of law or equity by an amendment, in the absence of a contrary intent." *Id.* at § 191.

19

58.     Certificates—with the express goal of removing legal barriers to the employment of people with criminal records—were in existence for nearly twenty years when 8 CFR 1292.12 (a)(3)-(5) Regarding those convicted of a Serious Crime are not to be accredited were enacted. For nearly a decade prior, New York law protected people with criminal records from employment discrimination because of "the public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses." N.Y. CORRECT. LAW § 753(1)(a).

59.     When the Legislature has limited certificates' power, it has done so explicitly. In each of the four instances, the limitation was clearly manifested in both Article 23 and the barrier statute.

60.     The Legislature amended *both* the Correction and Public Health Laws in 1983 to narrow CRDs' power in order to overcome *Hodes*. CRDs would no longer block the mandatory loss of nursing home certification upon conviction of certain crimes.

61.     Under the New York Constitution, the government must have a rational basis for treating similarly situated groups differently. *Da Grossa v. Goodman*, 72 Misc.2d 806, 808 (Sup. Ct. N.Y. County 1972).

62.     In *Da Grossa*, the court directed the New York County Supreme Court clerk to process a CRD application for a federal conviction, even though the clerk maintained that CRDs were only available for state convictions. *Id.* Given the "laudatory purpose . . . to facilitate the return of first offenders to society as useful citizens," it was irrational to deny a New Yorker the opportunity to apply for a CRD just because he was convicted in federal court. *Id.*

63.     Similarly, it is irrational for the OLAP to deny Petitioners the opportunity to continue participating in the Recognition and Accredited Program. The OLAP Director simply presume a direct relationship or unreasonable risk exists because the Petitioner has a conviction record without evaluating the Article 23-A factors using the Petitioner's specific information before reaching the final conclusion.

## VIOLATIONS OF LAW

### FIRST CAUSE OF ACTION:
### RESPONDENT'S DENIAL WAS AN ABUSE OF DISCRETION AND ARBITRARY AND CAPRICIOUS AND CONTRARY TO LAW

64. Petitioner repeats and re-alleges each paragraph above as if fully set forth herein.

65. This petition is brought pursuant to CPLR § 7803(3).

66.     Petitioner Carlos Davila holds a Certificate of Good Conduct, which relieves holders of any disability and removes "any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein." N.Y. CORRECT. LAW § 703-a(1) (CGC).

67.     By refusing to consider whether Petitioner was qualified to continue his Accreditation as a BIA Representative in contravention of clearly established law, Respondent abused its discretion and acted arbitrarily and capriciously and contrary to law.

68.     The decision must be annulled where, as here, it is arbitrary and capricious and fails to properly consider all the factors required by law. Arrocha, 93 NY2d at 363. As the Court of Appeals emphasized in Bonacorsa v Van Lindt, 71 NY2d 605, 611 (1 988), "Article 23-A of the Correction Law was enacted in 1976 in an attempt to eliminate the effect of bias against ex-offenders which prevented them from obtaining employment.

21

## SECOND CAUSE OF ACTION:
### RESPONDENT'S DENIAL VIOLATED THE EQUAL PROTECTION CLAUSE OF THE NEW YORK STATE CONSTITUTION

69. Petitioner repeats and re-alleges each paragraph above as if fully set forth herein.

70. New York: Certificates of rehabilitation take two forms: certificates of relief from disabilities ("CRDs") and certificates of good conduct ("CGCs"). Both forms lift occupational bars.

71. People with a Certificate of Good Conduct are similarly situated to those with a Certificate of Relief from Disabilities because both certificates have the same relevant legal effect, using identical statutory language.

72. "No person shall be denied the equal protection of the laws of this state or any subdivision thereof." N.Y. CONST. art. I, § 11.

73. Protected interests in property are normally "not created by the Constitution. Rather, they are created, and their dimensions are defined" by an independent source such as state statutes or rules entitling the citizen to certain benefits. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701,2709 (1972). Such as here Petitioner is entitled to the benefits Article 23-A of the Correction Law and related statutes.

74. The Due Process Clause also forbids arbitrary deprivations of liberty. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the Clause must be satisfied. Wisconsin v. Constantinou, 400 U.S. 433, 437, 91 S.Ct. 507, 510(1971); Board of Regents v. Roth, 408 U.S. 15641 at 570-71, 92 S.Ct.127011 at 2707 1(1972)1. School authorities here suspended appellees from school for periods of up

22

to 10 days based on charges of misconduct. If sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment. It is apparent that the claimed right of the State to determine unilaterally and without process whether that misconduct has occurred immediately collides with the requirements of the Constitution. Goss v. Lopez, 419 U.S. 565, 574-75, 95 S.Ct.729, 736 (1975) (footnote omitted).

75. In addition to the liberty interest in reputation, the Supreme Court harmonized other liberty interests protected by the fourteenth amendment due process clause that may be threatened by government action when it:

(1) abridges an individual's other constitutional rights, Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697 (1972)(freedom of speech); N.A.A.C.P. v. Alabama, 357 U.S. 449, 461-63,78 S.Ct. 1163, 1171-72 (1958) (freedom of association); Roe v. Wade,410 U.S. 113, 152, 93 S.Ct. 705, 726 (1973) (privacy) (see (4) below];

(2) imposes upon an individual "a stigma or other disability that foreclose(s) his freedom to take advantage of other employment opportunities," Board of Regents v. Roth, 408 U.S. 564, 573-74, 92S.Ct. 2701, 2707 (1972);

(3) Deprives a person of the right "to contract, to engage in any of the common occupations of life, to acquire useful knowledge," Roth, supra, 408 U.S. at 572, 92 S.Ct. at 2707; Meyer v. Nebraska, 262U.S. 390, 399, 43 S.Ct. 625, 626 (1923); see also CCUC v. Northern Virginia Transportation Commission, 551

23

F.2d 555, 558 (4th Cir. 1977); Grove v. Ohio State University, 424 F. Supp. 377,

382 (S.D. Ohio 1976);

76. Due process liberty interest at stake where the government has damaged a person's

reputation In the process of taking significant action against that person, such as

refusal to rehire, dismissal from a job, or discharge from the military, even when

there is no property interest in the Job or military status.

THIRD CAUSE OF ACTION:
RESPONDENT'S DENIAL CONTRAVENED ARTICLE 23-A OF THE
NEW YORK CORRECTION LAW, WHICH VIOLATED THE
STATE AND CITY HUMAN RIGHTS LAWS

77. Petitioner repeats and re-alleges each paragraph above as if fully set forth herein.

78. In the alternative, if Respondent did consider whether to qualify Petitioner its

decision to deny him because of his conviction history was an abuse of discretion and

arbitrary and capricious as a matter of law because it violated Article 23-A.

79. Upon information and belief, Respondent OLAP's based its Revocation or suspension

on Petitioner's conviction history without finding such history was either directly

related to a being an Accredited Representative or that qualifying him would pose an

unreasonable risk to persons or property. N.Y. CORR. LAW § 752.

80. Upon information and belief, the Respondent OLAP Director denied Petitioner

without considering New York's public policy to encourage employment and

licensure of the people with conviction histories; the job's necessary duties and

responsibilities and the conviction's bearing on the applicant's fitness and ability to

fulfill them; how long ago the offenses occurred, how serious they were, and the

24

Petitioner's age at that time; Petitioner's evidence of rehabilitation; and his Certificate of Good Conduct. N.Y. CORR. LAW § 753.

81. Upon information and belief, the Respondent OLAP Director did not request or possess the information necessary to permissibly deny Petitioner based on the direct relationship or unreasonable risk exceptions to Article 23-A.

82. By violating Article 23-A, Respondent committed an unlawful employment practice in violation of the State Human Rights Law N.Y. EXEC. LAW § 296(15),(16); N.Y. CITY ADMIN. CODE § 8-107(10),(11).

**WHEREFORE**, Petitioner seeks judgment:

1- Declaring that Certificates of Good Conduct bypass conviction barriers set forth in December 19, 2016 New Rule 8 C.F.R §§1003.102 (h) 1003.103 on the Recognition and Accreditation Program (OLAP);

2- Directing Respondent OLAP Director to declare that its decision to not qualify Petitioner to continue participation as an Accredited Representative in New York is null and void;

3- Directing Respondent OLAP Director to decide, consistent with Correction Law Article 23-A, whether to qualify Petitioner Carlos M. Davila to continue his Full Accredited Representative in New York within thirty days of this Court's decision; and the reinstatement Recognition of A New Beginning For Immigrant's Rights, Inc;

4- In the alternative, declaring that Respondent OLAP Director violated Correction Law Article 23-A and the State and City Human Rights Laws by denying reinstatement Recognition to Petitioner A New Beginning For Immigrant's

25

Rights, Inc., and the Accreditation of Petitioner Carlos M. Davila; declaring the

OLAP Director's decision null and void; and directing Respondent to qualify

Petitioner to the Recognition and Accreditation Program, non pro tum.

5- Entering judgment on behalf of Petitioner Carlos M. Davila against Respondent

OLAP for restitution and damages incidental to Respondent's disqualification of

Petitioner including but not limited to back pay and all other rights, privileges,

and benefits Petitioner would have been entitled to had he been able to work at A

New Beginning For Immigrant's Rights, Inc and any other New York Non-For-

Profit Organization dedicated to represent noncitizens in immigration matters;

6- Alternatively, directing a trial of any issues of fact raised by the parties' pleadings

and proof. CPLR 7804(h);

7- Awarding attorney fees and costs under the New York Equal Access to Justice

Act. CPLR § 8601; and

8- Granting such other and further relief that this Court deems just and proper.

Dated: June 6, 2018
Bronx, NY

Respectfully yours,

Carlos M. Davila, Pro-se
305 East 149th St 2nd Floor
Bronx, New York 10451
(518)977-0619

## VERIFICATION

STATE OF NEW YORK
COUNTY OF BRONX: ss:

CARLOS M. DAVILA, being duly sworn, deposes and says that: I am the Petitioner in this

proceeding; I have read the foregoing petition and know the contents thereof; the same are true to

my own knowledge, except as to matters therein stated to be alleged on information and belief;

and as to those matters I believe them to be true.

Dated:

Respectfully submitted,

Carlos M. Davila
President of a New Beginning For Immigrant's Rights, Inc
305 East 149th St. Second Floor
Bronx, New York 10451
(647) 375-3392

Sworn to before me this
___ day of June 2018

Notary Public

JASON VANCE
NOTARY PUBLIC, State of New York
No. 04VA6161023
Qualifed in Bronx County
Commission Expires Feb. 8, 20